```
                UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF INDIANA
                      HAMMOND DIVISION


ATTORNEYS' TITLE GUARANTY     )
FUND, INC.,                   )
                              )
          Plaintiff           )
                              )
     v.                       )   Case No. 2:05 cv 58
                              )
R. BRIAN WOODWARD and         )
GUARANTEED FIDELITY, INC.,    )
                              )
          Defendants          )
```

OPINION AND ORDER

This matter is before the court on the Motion to Stay filed by the defendants, R. Brian Woodward and Guaranteed Fidelity, Inc., on April 27, 2005.  For the reasons set forth below, this motion is **GRANTED IN PART**.

Background

This case pertains to the "Hillcrest Property," a piece of real property located at 432 N. Halleck Street in DeMotte, Indiana.  The plaintiff, Attorneys' Title Guaranty Fund ("ATG"), issues title commitments and insurance through shareholder-agents authorized to solicit such business on behalf of ATG.  As a shareholder-agent of ATG, defendant Brian Woodward issued title commitments and insurance through Woodward's wholly-owned title insurance corporation, defendant Guaranteed Fidelity.

On August 25, 1999, the Gerrit Van Keppel Revocable Trust held title to the Hillcrest Property.  That day, Woodward issued a title insurance commitment through Guaranteed showing that Anne L. Dewes would hold title to the Property as Trustee of the Anne

L. Dewes Revocable Trust and that 1st Source Bank was the proposed insured mortgagee in the amount of $200,000 after the proposed sale of the real estate.  However, the commitment's legal description of the property was erroneous.  Two days later on August 27, 1999, the Internal Revenue Service recorded a Notice of Federal Tax Lien in the amount of $685,817.44 on the Hillcrest Property against Gerrit and Gretchen Van Keppel individually.

On October 5, 1999, the Van Keppel Trust conveyed the Hillcrest Property to the Dewes Trust via a deed drawn by Woodward's law firm which contained the erroneous property description.  On the same day, Woodward, through Guaranteed, updated the August 25, 1999 title commitment to cover the deed and the proposed mortgage to 1st Source.  The updated title commitment did not exclude the Federal tax lien.

On October 7, 1999, the Dewes Trust conveyed the Hillcrest Property to Anne and Jeffrey Dewes individually.  This deed, also prepared by Woodward's law firm, contained the erroneous property description.  In addition, Anne and Jeffrey Dewes executed a $200,000 promissory note and mortgage on the property in favor of 1st Source which was recorded on October 25, 1999, with the erroneous description.  However, 1st Source subsequently re-recorded the mortgage with the correct description.  Finally, on June 16, 2000, Woodward, through Guaranteed, issued a $200,000 mortgage title policy in favor of 1st Source, guaranteeing the

mortgage as the first lien and failing to exclude the Federal tax lien.

In November 2000, Anne Dewes filed for Chapter 13 bankruptcy. On February 28, 2001, she initiated an Adversary Proceeding against the United States by and through the IRS and against 1st Source, seeking to avoid the Federal tax lien and the 1st Source mortgage. ATG defended 1st Source in that proceeding pursuant to the terms of the title policy.

On December 11, 2003, the Bankruptcy Court entered an amended judgment holding that 1) the Federal tax lien, secured at the time for approximately $262,000, was the first lien upon the Hillcrest Property by virtue of the August 27, 1999 recorded notice of lien; 2) the 1st Source mortgage was a second lien; and 3) Dewes could avoid the tax lien, which was preserved for the benefit of the bankruptcy estate. Both 1st Source and the United States appealed to the District Court, which affirmed the Bankruptcy Court. In so holding, the District Court found that 1) Dewes had standing to bring an avoidance action; 2) the Bankruptcy Court did not err in accepting the parties' stipulation that if the Federal tax lien attached, then it was first in priority before the 1st Source mortgage; and 3) the tax lien was recorded outside the chain of title and therefore did not provide notice to a bona fide purchaser. The District Court further affirmed the Bankruptcy Court's holding that Dewes could avoid the tax lien, which nevertheless was preserved for the Bankruptcy estate. This judgment is on appeal to the Seventh Circuit, and

no briefing scheduled has been set.  Anne Dewes' Chapter 13 Bankruptcy reorganization plan was approved by the Bankruptcy Court on December 8, 2004, but remains open as it depends in part on the outcome of the appeal to the Seventh Circuit.

In addition to the appeal pending before the Seventh Circuit, two separate suits have been filed in state court as a result of the above transactions.  On October 9, 2001, 1st Source sued ATG, Woodward, his law firm, and Guaranteed in the Jasper County Circuit Court.  This suit alleges negligence and breach of duty by the Woodward defendants in failing to disclose the existence of the tax lien and in providing an erroneous property description.  1st Source also asserts a claim against ATG for negligent supervision.  Although ATG moved to dismiss this claim, the circuit court stayed the case "until the plaintiff can plead actual damages or until further Order of the court."[1]  (Mot. for Stay, Exh. G) In a second suit filed against Woodward individually on October 5, 2001, Anne Dewes, Jeffrey Dewes, and the Anne Dewes Trust asserted a claim for negligent legal representation based on Woodward's failure to find the IRS tax lien on the Hillcrest Property.  On October 10, 2001, the Jasper County Circuit Court also stayed this action pending resolution of the appeal before the Seventh Circuit.

---

[1] Woodward characterizes this stay as pending the outcome of the Seventh Circuit appeal. (*See* Mot. for Stay, p. 6).  This purported rationale is consistent with the state court's order: 1st Source cannot know the extent of its damages until the Seventh Circuit resolves the priority of the liens.  The state court acknowledged as much in stating on March 19, 2002 that "at this time, whether or not the plaintiff has suffered damages in unknown, and the extent thereof is unknown." (Mot. for Stay, Exh. G).

On February 14, 2005, ATG filed a complaint in this court against Woodward and Guaranteed for declaratory judgment pursuant to 28 U.S.C. §2201. The first count of this complaint, which alleges breach of the shareholder agreement, asserts the defendants' repeated erroneous description of the Hillcrest Property and failure to exclude the tax lien are events that "would result in civil liability" within Article VII, §G, ∂2 of the ATG by-laws, which provides:

> *Reimbursement from Shareholders*. If a loss occurs from a cause that would result in civil liability for the shareholder who issues the guaranty or policy under which the loss occurs, then and in that event, the corporation may seek reimbursement from that shareholder for the amount of the loss.

ATG further characterizes the $250,000 in attorney's fees that they have expended in defending 1st Source in the bankruptcy proceeding, in addition to further attorneys' fees and costs and "potential indemnification of loss of priority of the 1st Source mortgage," as "losses" triggering Woodward's duty to pay under Article VII, §G, ∂2. ATG further claims losses of $8,500 for Woodward's failure to exclude a judgment lien and $67,747.70 as a result of his failure to exclude prior recorded mortgages from the policy coverage. In Count II, ATG claims a breach of fiduciary duty for the failures described above.

On April 27, 2005, the defendants filed the Motion to Stay that is before the court here.

5

Discussion

### I. Unreleased Mortgage and Judgment Lien

As a preliminary matter, the defendants state that this case need not be stayed insofar as it relates to the $8,500 unreleased mortgage and the $67,747.70 judgment lien because these liens are not at issue in any of the three other proceedings. ATG also does not object to proceeding on these claims in the event that the remaining issues are stayed. Accordingly, the court finds that a stay is not appropriate on the unreleased mortgage and judgment lien.

### II. Motion to Stay

Before reaching the issue of whether a stay on the balance of ATG's complaint is appropriate, the court must resolve a dispute between the parties as to the applicable law. The defendants argue that the court must apply the standard for staying an action for declaratory judgment under 28 U.S.C. ß2201 to both Courts I and II. Conversely, ATG argues that the standard the defendants advocate applies only to Count I and that Count II must be considered under the abstention doctrine outlined by the Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1235, 47 L.Ed.2d 483 (1976). The crux of ATG's argument is that Count II states an independent claim for damages, rather than merely for declaratory judgment. See *Pence v. Lightening Rod Mutual Insurance Company*, 203 F.Supp.2d 1025, 1028 (S.D. Ind. 2002) (noting that distinct from the abstention analysis relevant to actions

6

for declaratory judgment, *Colorado River* applies to claims for damages).

Nothing in the complaint states explicitly or implicitly that ATG seeks damages.  The complaint is titled "Complaint for Declaratory Judgment," and the jurisdictional statement exclusively avers that "[t]his is an action for a declaratory judgment pursuant to 28 U.S.C. ß2201."  (Comp. ∂2) Moreover, the "wherefore" clauses for both Counts state that ATG "requests <u>declaratory judgment</u> . . . that Woodward and Guaranteed are <u>liable</u> . . ." for defense costs related to the Adversary Proceeding and appeals therefrom, as well as loss or damage as a result of the 1st Source lien losing priority and Woodward's failure to exclude the unreleased mortgage and judgment lien.  Thus, an action for damages cannot be found in the complaint.

Nevertheless, ATG's response to the motion to stay suggests that ATG seeks to (1) characterize attorneys fees as a "loss [occurring] from a cause that would result in civil liability" under the title policy, and (2) establish that it may proceed here on a damages claim for attorney fees independently from the question of whether ATG suffered another form of "loss" under the policy. (*See* Response Brief, pp. 4-5) However, the court notes that the scope of the insurance policy is a substantive matter, that any resolution of the issue by the district court would necessarily involve a determination of what constitutes a loss and whether such losses have occurred, and that this very issue is before the Seventh circuit.  In any event, damages could not

7

be awarded in a sum certain until all appeals are concluded in the Adversary Proceeding and the Seventh Circuit definitively determines the priority of the 1st Source lien.  Consequently, even if this court found that the complaint asserts an independent claim for damages in the form of attorneys fees, which it does not and can not without deciding what constitutes a compensable "loss," no complete relief could be awarded at this time.

Having determined that the complaint seeks only declaratory relief, the court now turns to the issue of whether parts of this case should be stayed.  The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. ß2201.  A federal court enjoys "unique and substantial discretion" in deciding whether to grant declaratory relief under the Act.  *Wilton v. Seven Falls Company*, 515 U.S. 277, 286, 115 S.Ct. 2137, 2142, 132 L.Ed.2d 214 (1995).  *See also* *Sta-Rite Industries, Inc. v. Allstate Insurance Company*, 96 F.3d 281, 287 (7th Cir. 1996); *Pence*, 203 F.Supp.2d at 1028.  This broad discretion is distinct from and unaffected by the rise of the *Colorado River* abstention doctrine "which permits a district court to abstain from entertaining a case only under 'exceptional circumstances.'"  *Pence*, 203 F.Supp.2d at 1028.  *See also* *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246.  Rather, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields

8

to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288, 115 S.Ct. at 2143. *See also Nationwide Insurance v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995). Furthermore, when a parallel state case is pending, a stay is the "preferable course" because it provides the state court with the opportunity to resolve the matter without risking a time bar to any unresolved claims in the federal forum. *Wilton*, 515 U.S. at 288 n.2, 115 S.Ct. at 2143 n.2; *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1942).

The Seventh Circuit generally applies a four-prong test to determine whether a stay is appropriate under the Declaratory Judgment Act. *See Zavalis*, 52 F.3d 692; *NUCOR Corporation v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 (7th Cir. 1994) (using a similar five-prong test from the Sixth Circuit). According to the Seventh Circuit, the court should consider:

> [1] whether the declaratory suit presents a question distinct from the issues raised in the state court proceeding; [2] whether the parties to the two actions are identical; [3] whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative litigation; and [4] whether comparable relief is available to the plaintiff seeking a declaratory judgment in another forum or at another time.
>
> *Zavalis*, 52 F.3d at 692

These factors are not exclusive and should be applied in conjunction with other considerations of efficiency and wise judicial administration, such as whether declaratory judgment would "provide an arena for a race to *res judicata*," or increase friction between federal and state courts.  *NUCOR*, 28 F.3d at 579 (*citing* ***Nationwide Mutual Fire Insurance Company v. Willenbrink***, 924 F.2d 104, 105 (6th Cir. 1991)).  *See also* ***Green v. Mansour***, 474 U.S. 72, 73, 106 S.Ct. 423, 427-28, 88 L.Ed.2d 371 (1985) (stating that questions of discretion should consider "equity, comity and federalism.").

In addition, the Seventh Circuit interprets the "parallel suit" requirement to mean not identical, but substantially the same parties and issues between the federal and state cases.  *See* ***Sta-Rite***, 96 F.3d at 287 (implicitly treating two suits involving the same plaintiff and issue, one in federal and one in state court, as parallel though against different defendants); ***Zavalis***, 52 F.3d at 692 ("Whether the parties to the two actions are identical" is just one factor in determining the relevancy of a pending state action).  *See also* ***Pence***, 203 F.Supp.2d at 1027 (granting a stay when all the issues before the federal court were present in other state court proceedings except the plaintiff's claim for damages, which was dependent for its resolution upon the related state court claims).  Other circuits have seen a similar loosening of the parallel suit requirement.  *See* ***The Sherwin-Williams Company v. Holmes County***, 343 F.3d 383, 392-94 (5th Cir. 2003) (collecting cases in which federal appellate

10

courts have retained the district court's discretion to dismiss a declaratory action when no parallel state action has been filed); *Aetna Casualty and Surety Company v. Ind-Com Electric Company*, 139 F.3d 419, 423 (4th Cir. 1998) (cited in *Sherwin-Williams*, 343 F.3d at 383-94 for the proposition that "where simultaneously pending state actions and federal declaratory judgment actions are not perfectly parallel, the extent of similarity is a factor in the decision whether to exercise discretion to hear a declaratory action, but is not determinative"). Accordingly, this court finds that the fact the pending actions do not mirror "parallel suits" in that phrase's strictest formulation is not grounds to deny a stay automatically.

A comparison of the issues before this court with the pending state and federal court proceedings reveals that a stay of the declaratory judgment action is appropriate and necessary. The appeal before the Seventh Circuit and the two pending state court cases involve the same group of parties. In fact, the case that 1st Source filed against ATG, Woodward, his law firm, and Guaranteed joined all of the parties in this case as defendants. Although the case is stayed now, ATG had an opportunity to file a crossclaim for declaratory judgment or monetary damages against Woodward and Guaranteed in that proceeding.

In addition, all of the questions presented in this case are before the other courts. Here, ATG asks the court to declare its rights pertaining to 1) attorney fees defending 1st Source in the Adversary Proceeding on appeal to the Seventh Circuit, 2) the

11

availability of damages from the loss of priority of the 1st Source mortgage, and 3) whether Woodward breached his fiduciary duty by failing to disclose the existence of the federal tax lien or by including an erroneous description of the Property in the title commitment.

First, the court already has explained why the issue of attorney fees is contingent upon the resolution of other issues before the Seventh Circuit.  See *Pence*, 203 F.Supp.2d at 1027. Second, although ATG claims a right of indemnification here for the loss of priority of the 1st Source mortgage, ATG stipulated that the mortgage would lose priority if the federal tax lien attached during ATG's representation of 1st Source in the Adversary Proceeding.  The District Court affirmed the Bankruptcy Court's decision to accept this stipulation, and the issue is now before the Seventh Circuit.  The loss of priority is also an issue in the state suit filed by 1st Source.  Third, Woodward's duty to discover the federal tax lien is an issue in both state court proceedings, as well as the Seventh Circuit.  (*See, e.g.* Mot. Stay, Exh. D, pp. 4-5) ("As phrased by the IRS, the issue at hand is 'whether a title examiner . . . is required to check for federal tax liens filed in the name of the settlor, in light of the power of revocation'").  And finally, the Bankruptcy Court found, and the District Court did not overrule, that the transfers of the property were valid notwithstanding the erroneous legal description.  This issue also implicates Woodward's fiduciary duty and currently is before the Seventh Circuit.  Going

forward with this declaratory judgment will merely "provide an arena for a race to *res judicata*," complicate the procedural posture of the other three suits, and increase friction between this court and the Jasper Circuit Court.

Nevertheless, ATG argues that a stay should not be granted because the state cases and appeal to the Seventh Circuit are at a standstill until other bankruptcy proceedings are resolved. ATG argues that the issues in this suit commenced in 1999, and that ATG should not be required to wait six or seven years to litigate these issues.  However, ATG stood on notice of its claims when it defended 1st Source in the Adversary Proceeding beginning in February 2001 and had a second opportunity to assert its claims in the state case filed by 1st Source in October 2001. Any stated sense of emergency is belied by ATG's four year delay in attempting to declare its rights.  Furthermore, ATG will not be prejudiced by a stay, which preserves its claims irrespective of the statute of limitations.  *Wilton*, 515 U.S. at 288 n.2, 115 S.Ct. at 2143 n.2.  For these reasons, ATG's argument is not persuasive.

_____

For the foregoing reasons the Motion to Stay filed by the defendants, R. Brian Woodward and Guaranteed Fidelity, Inc., on April 27, 2005, is **GRANTED IN PART**.  This case may proceed with respect to the $8,500 unreleased mortgage and the $67,747.70 judgment lien.

13

ENTERED this 15th day of August, 2005

                                        s/ ANDREW P. RODOVICH
                                            United States Magistrate Judge