```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION
```

ATTORNEYS' TITLE GUARANTY )
FUND, INC., )
                                  )
       Plaintiff )
                                  )
    v. ) Case No. 2:05 cv 58
                                  )
R. BRIAN WOODWARD and )
GUARANTEED FIDELITY, INC., )
                                  )
       Defendants )

OPINION AND ORDER

This matter is before the court on the Motion to File Amended Complaint filed by the plaintiff, Attorneys' Title Guaranty Fund, Inc., on June 21, 2007. For the reasons set forth below, this motion is **GRANTED.**

Background

This court's order of August 15, 2005, (DE 18), describes fully the factual setting of this case, which will be summarized as necessary here. Defendant R. Brian Woodward is a shareholder-agent of plaintiff Attorneys' Title Guaranty Fund, Inc. ("ATG"). ATG issues title insurance and commitments through its shareholders. Woodward solicits and issues ATG's title insurance personally and through his wholly-owned corporation, Guaranteed Fidelity, Inc. ("Guaranteed"). Woodward operates as an ATG agent pursuant to a shareholder agreement which provides for reimbursement from shareholders in Article VII:

> *Reimbursement from Shareholders.* If a loss
> occurs from a cause that would result in
> civil liability for the shareholder who is-

>sues the guaranty or policy under which the loss occurs, then and in that event, the corporation may seek reimbursement from that shareholder for the amount of the loss.

(Complaint ¶ 25)

Woodward issued a title insurance commitment for property referred to as the Hillcrest Property on August 25, 1999. The conveyance of this property became central to a series of law suits. On August 27, 1999, the IRS recorded a Federal Tax Lien against the property in the amount of $685,817.44. Subsequently, the property was transferred from the Gerrit Van Keppel Revocable Trust to the Anne Dewes Trust. The Anne Dewes Trust then transferred the Hillcrest Property to Anne and Jeff Dewes individually, and they executed a mortgage and note on the property in favor of 1st Source Bank on October 7, 1999, in the amount of $200,000. Woodward allegedly provided an incorrect legal description for these conveyances and failed to exclude the federal tax lien from the title commitment.

In November 2000, Anne Dewes filed for Chapter 13 bankruptcy. After initiating an adversary proceeding against the United States by and through the IRS and against 1st Source, the bankruptcy court accepted the parties' stipulation that the federal tax lien was superior to the lien held by 1st Source and held that Dewes could avoid the tax lien, which was preserved for the benefit of the bankruptcy estate. These conclusions were upheld on review by the district court and subsequently raised on appeal to the Seventh Circuit.

Two proceedings were initiated in state court.  1st Source sued ATG, Woodward, his law firm, and Guaranteed in the Jasper County Circuit Court, alleging negligence and breach of duty in failing to disclose the tax lien and in providing an erroneous property description.  1st Source also asserted a claim against ATG for negligent supervision.  This cause was stayed until 1st Source was able to plead actual damages, which depended upon the outcome of the Seventh Circuit appeal.

Anne Dewes filed the second state cause of action, alleging Woodward's negligence in providing legal representation in his failure to find the IRS tax lien on the Hillcrest property.  This action also was stayed pending resolution of the appeal before the Seventh Circuit.

On February 14, 2005, ATG filed a Complaint for Declaratory Judgment in this court pursuant to 28 U.S.C. §2201.  ATG sought a declaration that Woodward is liable to ATG for the losses that were incurred in his defense.  Woodward filed a motion to stay this claim on April 27, 2005, and this court granted Woodward's motion.  The decision to stay was based upon the standards articulated in *Wilton v. Seven Falls Company*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).  This court found that "all of the questions presented in this case are before other courts." (Order, August 15, 2005, p. 11)  Specifically, this court concluded that "Woodward's duty to discover the federal tax lien is an issue in both state court proceedings, as well as the Seventh Circuit." (Order, p. 12)

3

On September 22, 2006, ATG moved to vacate the stay, stating that one of the Seventh Circuit appeals had been dismissed and that ATG would be withdrawing its appearance in another appeal and expected it to be dismissed as well.  ATG also anticipated the dismissal of the state court action initiated by 1st Source. This court denied the motion to vacate the stay relying on *Wilton* and the existence of the remaining litigation.  Noting that the "existence of just one related proceeding raises the same concern over the use of *res judicata*, a race to judgment, and the possibility of inconsistent verdicts," this court exercised its discretion to await the resolution of the state court proceedings.

The Seventh Circuit appeal was dismissed on July 21, 2006. ATG entered a settlement agreement with its insured, 1st Source, under which ATG paid 1st Source $50,000 in settlement of its obligation under the Title Policy.

Again, on March 30, 2007, ATG moved to vacate the stay, and again, this court denied the motion.  ATG's motion noted that only one of the related proceedings remained pending, but the analysis regarding the stay was unchanged with regard to the parallel case.  ATG's reply brief stated the intention to file an amended complaint, which, it argued, would alter the analysis regarding the motion to lift the stay. The court denied the motion to lift the stay without prejudice and directed the plaintiff to file a separate motion for leave to file an amended complaint according to Local Rules 7.1 and 15.1.  Accordingly, the current Motion to File Amended Complaint is before the court.

4

In addition to the events described here with the Dewes/Hillcrest property dispute, the Amended Complaint introduces a separate policy transaction in which ATG complains that Woodward issued a faulty mortgage title insurance policy in favor of Advanta Financial Corporation.  Count IV alleges that Woodward issued this policy without obtaining proper acknowledgement, allowing the mortgagor to avoid the mortgage in Chapter 13 proceedings that followed.  ATG seeks to be indemnified for the $78,105.26 paid to Advanta as a result of the defective acknowledgement.

In summary, ATG seeks to amend its complaint of February 14, 2005, in two respects.  First, the initial complaint praying for declaratory judgment regarding the Dewes/Hillcrest property dispute has been changed to Counts I, II, and III praying for damages arising from that dispute.  Secondly, a separate allegation regarding the Advanta mortgage has been added to the Complaint as Count IV, also praying for damages.

## Discussion

Federal Rule of Civil Procedure 15(a) provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  *See generally* **Foman v. Davis**, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d. 222 (1962).  This Circuit has recognized that because the complaint merely serves to put the defendant on notice, it should be freely amended as the case develops, as long as amendments do not unfairly surprise

5

or prejudice the defendant. *Jackson v. Rockford Housing Authority*, 213 F.3d 389, 390 (7th Cir. 2000). The decision of the court to deny leave to amend a complaint is reviewed for abuse of discretion. *Ajayi v. Aramark Business Services*, 336 F.3d 520, 530 (7th Cir. 2003).

Amendments are freely allowed for electing a different remedy than the one originally requested, and a party desiring to change the demand for relief may do so under Rule 15(a). Wright & Miller, 6 *Federal Practice & Procedure* §1474, at 547 (2d ed. 1990).

The court may deny leave because the amendment is futile. *Bethany Phamacal Compamy, Inc. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001). Futility generally is measured by whether the amendment would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), unless a summary judgment motion is pending, permitting futility to be shown with reference to the entire summary judgment record. *Peoples v. Sebring Capital Corp.*, 209 F.R.D. 428, 430 (N.D. Ill. 2002). If the proposed amendment is not clearly futile, denying leave to amend on this ground would be improper. *See* Wright & Miller, 6 *Federal Practice & Procedure* §1487, at 637-642 (2d ed. 1990)("If the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend.").

Leave to amend may be denied for untimeliness. Such reasons include "undue delay, bad faith or dilatory motive on the part of

the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182, 83 S.Ct. at 230.  The denial of a motion to amend pleadings is proper if the discovery and dispositive deadlines have passed and the motion is filed near the trial date. For example, in *Alinsky v. United States*, 415 F.3d 639, 648 (7th Cir. 2005), the Seventh Circuit denied the plaintiff's motion for leave to amend when "plaintiffs' motion came approximately three years after the start of the litigation and approximately eight months after the plaintiffs completed discovery." Also, in *Crest Hill Land Development, LLC v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005), the Seventh Circuit upheld the denial of the defendant's motion for leave to amend "five months after its original answer and one month after discovery had closed" in order to prevent delay and prejudice to the plaintiff, finding that new arguments or defense theories raised after the completion of discovery should be discouraged.

　　The first three counts of ATG's Amended Complaint are substantially the same as the original complaint filed on February 14, 2005, except that they no longer request a declaratory judgment.  Now, ATG prays for the court to award damages for Woodward's alleged breaches of duties.  Because amendments to change remedy are freely allowed, the election to change the prayer for declaratory judgment to a prayer for damages is allowable.  Due to the stay imposed on the action since August 2005,

7

unlike *Crest Hill* and *Alinsky*, the motion to amend is not after discovery and is not untimely.  Woodward has been on notice of the nature of ATG's complaints and the applicable clause in his shareholder contract since the original filing and cannot claim surprise or prejudice. Woodward and Guaranteed acknowledge this in their response, referring to the change as "not objectionable in and of itself."  *See, e.g., Jackson*, 213 F.3d. at 393 (explaining the general rule that amendment is allowed absent undue surprise or prejudice to the plaintiff).

Count IV of the Amended Complaint adds a completely new claim based on a distinct set of facts and requests monetary damages.  Because this claim appears to concern events that occurred subsequent to the filing of the initial complaint, technically ATG is attempting to file a supplemental pleading - not an amended complaint - with the addition of this new claim. Though a technical misnomer, "many courts simply have treated an amendment containing supplemental matter as if it had been filed properly under Rule 15(d)."  *See* Wright & Miller, 6 *Federal Practice & Procedure* §1473, at 521 (2d ed. 1990).  Therefore, the court's discretion to allow an amended complaint and the satisfaction of the jurisdictional requirements of 28 U.S.C. §1332, diversity of parties and amount in controversy, are favorable to the prospects of the Motion to Amend.

Concerning futility, Woodward argues that Count IV is too vague to allow a response and that relation back of the amendment would expose a statute of limitations obstacle for the claim.

8

The court agrees that Rule 15(c) disallows the relation back of a new or different claim added by amendment which did not arise out of the same transaction as those in the original complaint.  This appears to be the case here, but the record does not contain sufficient facts concerning Count IV to make this determination feasible.  Count IV's allegation that Woodward issued a separate policy without obtaining proper acknowledgement, allowing the mortgagor to avoid the mortgage in Chapter 13 proceedings that followed and prompting ATG to seek indemnification for the $78,105.26 paid to Advanta as a result, arise from a different property transaction than those in Counts I-III.  In its Reply, ATG acknowledges the prospect that Count IV may not relate back, deeming it an issue which may be addressed at another time.

Given the facts available on the face of the pleadings, whether Count IV is futile based on a statute of limitations issue is unknown.  Like the court in **Peoples**, this court "can sensibly rely on the facts of a case only after they have been established, not before."  **Peoples**, 209 F.R.D. at 430-31.  Therefore, the issues here concerning relation back and the statute of limitations do not prohibit the amendment of the complaint to add Count IV. Accordingly, the Motion for Leave to File Amended Complaint is **GRANTED.**

In the current briefing, the parties do not confront directly the stay that has been entered in this matter. However, it was clear in ATG's reply in support of its motion to lift the stay that the effect of the amendment was to recast the complaint

9

in terms of damages, rather than declaratory relief, thereby altering the analysis regarding the stay.  Further, "[i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading."  Wright & Miller, 6 *Federal Practice & Procedure* §1476, at 558 (2d ed. 1990).  Following this reasoning, the court addresses Woodward's motion to stay which was granted as to the original declaratory judgment action which is now amended to seek damages.

The motion to stay this action is now governed by the Supreme Court's decision in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed. 483 (1976) with respect to ATG's claims for damages.  In this context, abstention from the exercise of federal jurisdiction is "an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244.  The court's inquiry under *Colorado River* is made according to a two-part standard that first asks whether the actions in question are parallel. *Tyrer v. City of South Beloit*, 456 F.3d 744, 751 (7th Cir. 2006). A parallel suit does not require identical parties or issues or a finding of "formal symmetry between the two actions."  *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004).  Rather, a suit is "parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Interstate Material Corporation v. City of Chicago*, 847 F.2d

10

1285, 1288 (7th Cir. 1988).  The court must examine whether the suits "involve the same parties, arise out of the same facts and raise similar factual and legal issues." *Tyrer*, 456 F.3d at 752 (*citing* *Clark*, 376 F.3d at 686).  The focus of this examination is whether there is "a substantial likelihood that the foreign litigation will dispose of all the claims presented in the federal case." *AAR International Incorporated v. Nimelias Enterprises, S.A.*, 250 F.3d 510, 518 (7th Cir. 2001).

Only if the court finds that the actions are parallel does it reach the second inquiry and ask whether "exceptional circumstances" justify a decision not to hear a case.  *Tyrer*, 456 F.3d at 751.  In the Seventh Circuit, this inquiry considers ten factors:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.
>
> *Tyrer*, 456 F.3d at 754

*See also* *Truserv Corporation v. Flegles, Inc.*, 419 F.3d 584, 592 n.2 (7th Cir. 2005).

Upon review of these factors, "if there is any substantial doubt that the parallel litigation will be 'an adequate vehicle

11

for the complete and prompt resolution of the issues between the parties,' it would be a 'serious abuse of discretion' for the district court to stay or dismiss a case in deference to the parallel litigation." *AAR International*, 250 F.3d at 518 (*quoting* *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 19, 103 S.Ct. 927, 938, 74 L.Ed.2d 765 (1983).

This more stringent *Colorado River* standard is applicable to ATG's claims for damages in Count I. At the time of ATG's Motion to Vacate the Stay of Proceedings on September 22, 2006, the relevant pending litigation remaining included: part of the pending Seventh Circuit appeal of the Dewes' bankruptcy reorganization plan for which ATG undertook the defense of 1st Source; the state court action initiated by 1st Source and including ATG as a defendant under a negligent supervision theory; and a second state court action brought by Dewes claiming negligent legal representation by Woodward, in which ATG is not named.

At the present time, the Dewes' bankruptcy reorganization plan has been dismissed by the Seventh Circuit and is not a parallel suit of any kind. ATG has entered into a settlement agreement with 1st Source under which it paid 1st Source the sum of $50,000 in settlement, and ATG has incurred a loss of $363,259.98 in attorneys' fees and costs in the defense of the Dewes' bankruptcy. This settlement removes from consideration the state court action initiated by 1st Source and including ATG as a defendant. Finally, the second state action brought by

12

Dewes claiming negligent representation by Woodward never has included ATG.

Turning to the first step of the *Colorado River* analysis, the court finds that while the dispute between Dewes and Woodward arose from the same set of facts which forms the damage action of Count I, the parties are not the same and the cases do not raise similar factual and legal issues.  The Dewes' action in state court is based on a negligent legal representation theory, charging Woodward with negligence in the title work that he performed for Dewes.  Here, ATG is praying for damages related to the Dewes' bankruptcy proceeding and the 1st Source action in state court.  Because the parallel suit requirement compels the court to ask if there is "a substantial likelihood that the foreign litigation will dispose of *all claims presented* in the federal case," the standard is not met here.  *See* **AAR International**, 250 F.3d at 518 (emphasis added).  The litigation presumptively remaining in state court, regardless of its outcome, will not affect or influence the settlement and legal costs that ATG has incurred in defending 1st Source and settling the negligent supervision claim.  Because the court does not find the actions parallel, it does not reach the second inquiry concerning "exceptional circumstances" from *Colorado River*.  *See* *Tyrer*, 456 F.3d at 751.

As to Counts II and III, the discussion in this court's order of August 15, 2005 began:

> As a preliminary matter, the defendants state that this case need not be stayed insofar as it relates to the $8,500 unreleased mortgage and the $67,747.70 judgment lien because these liens are not at issue in any of the three other proceedings. ATG also does not object to proceeding on these claims in the event that the remaining issues are stayed. Accordingly, the court finds that a stay is not appropriate on the unreleased mortgage and judgment lien.
>
> (Opinion and Order, August 15, 2005, (DE18) p. 6)

Again, at the final statement of the order, this sentiment is reiterated: "This case may proceed with respect to the $8,500 unreleased mortgage and the $67,747.70 judgment lien." (Opinion and Order, August 15, 2005, (DE18) p. 13)  Counts II and III of the Amended Complaint are the same, unique losses for the same, unique acts as the above unreleased mortgage and judgment lien. These Counts were never under a stay from this court and are not subject to one now.

_____

For the foregoing reasons, the Motion to Amend Complaint filed by the plaintiff, Attorneys' Title Guaranty Fund, Inc., on June 21, 2007, is **GRANTED.**  The stay in this matter is **LIFTED**. This matter is set for telephonic status conference on the **25th day of January, 2008 at 10:00 A.M.**  The court shall initiate the conference call.

ENTERED this 15th day of November, 2007

s/ ANDREW P. RODOVICH
United States Magistrate Judge